UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>SHANE MICHAEL TYON,<br>a/k/a "Chet,"<br><br>　　　　　Defendant. | CR. 18-50115-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Shane Michael Tyon, appearing *pro se*, filed a motion for compassionate release. (Docket 89). Pursuant to the October 21, 2020, Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Tyon's motion. (Dockets 90, 92-93, 97, 99 & 101). For the reasons stated below, defendant's motion is denied.

**AMENDED STANDING ORDER 20-06**

Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

[1] See https://www.sdd.uscourts.gov/socraa.

the COVID-19 virus into the federal prison system." (ASO 20-06 at p. 1). By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id.

¶ 4.  Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## MR. TYON'S CLASSIFICATION

On April 11, 2022, the FPD and the U.S. Attorney filed a notice designating Mr. Tyon as an Intermediate Priority case. (Docket 90).

## FACTUAL BACKGROUND

Mr. Tyon pled guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 851, 846, 841(a)(1) & 841(b)(1)(A). (Dockets 68, 69, 73 & 85). On June 1, 2020, Mr. Tyon was sentenced to a term of imprisonment of 235 months followed by 10 years of supervised release. (Docket 85 at pp. 2-3).

Mr. Tyon is currently an inmate at La Tuna FCI, a low security facility with an adjacent minimum security camp in Anthony, Texas. Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked May 24, 2022). The total inmate population at FCI La Tuna is currently 888 persons. https://www.bop.gov/locations/institutions/lat/(last checked May 24, 2022).

As of May 31, 2022, 231 staff members have been fully vaccinated and 1302 inmates fully vaccinated. https://www.bop.gov/coronavirus/ (last checked May 31, 2022). Since reporting of positive COVID-19 test results began, 652 inmates have tested positive. Id. There are currently no active COVID-19 cases among inmates and two staff members tested positive. Id. La Tuna reported two inmate deaths as a result of COVID-19, and 563 inmates and 121 staff have recovered as of May 31, 2022. Id.

Mr. Tyon has a scheduled release date of June 25, 2035. (Docket 92 at p. 201). He served approximately 21 percent of his statutory sentence and, under his current status in the Bureau of Prisons ("BOP"), Mr. Tyon is eligible for home detention on December 25, 2034. Id. at p. 200. Mr. Tyon is 45 years old. Id.

## MR. TYON'S MOTION

Mr. Tyon's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his medical conditions and confinement during the COVID-19 pandemic. (Docket 89). Mr. Tyon states he has "hypertension, asthma, liver disease, and obesity" which put him "at risk of

3

severe illness or death due to COVID." Id. at p. 4.  "Even after both vaccinations," Mr. Tyon represents that he "tested positive for COVID, his second infection in BOP custody." Id. at p. 2.  Mr. Tyon asks the court to consider his at risk factors and the infectivity rate at La Tuna in support of his request. Id. at p. 6.

On April 22, 2022, the FPD filed a supplement to his *pro se* motion. (Docket 97).  Mr. Tyon, through counsel, argues he is at increased risk of severe illness or death from COVID-19 due to "obesity, hypertension, asthma, and liver disease." Id. at p. 2.  Mr. Tyon argues "hypertension clearly is a significant risk factor in COVID-19 illnesses and this Court and others have found hypertension to be a basis for release." Id. at p. 6 (references omitted).  He submits the BOP records support his diagnosis of "grade three hepatic steatosis (inflammatory liver disease)." Id. at p. 7 (referencing Docket 92 at p. 11).  Defendant contends his "AST/ALT levels, which are associated with liver abnormalities, have continue[d] to increase since his diagnosis." Id. (referencing Docket 92 at pp. 11, 19 & 31).

"[W]hile incarcerated," Mr. Tyon submits he "remains at a greater risk of contracting COVID-19 and any adverse effects he may experience as a result of his asthma." Id. at p. 8.  As an asthma sufferer, defendant argues if he "contract[s] COVID-19, it could lead to asthma attacks, pneumonia or other serious lung disease." Id. (reference omitted).  Because a person is obese if his body mass index ("BMI") is 30 or greater, Mr. Tyon submits his BMI of 36.2,

4

complicated by an "almost 30 pounds" weight gain since being in BOP custody, "contributes to his showing of extraordinary and compelling reasons for release." Id. at p. 10.   Mr. Tyon asserts his "inability to socially distance in his prison facility, combined with his risk factors, constitute an extraordinary and compelling reason under § 3582(c)(1)(A)."   Id. at p. 13.

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Tyon submits that notwithstanding his criminal history of violence in his twenties, he "does not pose a danger to the community. . . . [And] is currently housed [in] a low-security facility, with a low-risk [of] recidivism level."   Id. at p. 14.   If the court is concerned about danger to the community, he argues that "can be appropriately addressed by home confinement—and a term of supervised release."   Id. at p. 15.   "If released," Mr. Tyon submits he "would be able to immerse himself in a supportive and loving community, to help him flourish and remain law-abiding, as shown by letters of support written on his behalf."   Id. (referencing Docket 96).

The court conducted a detailed review of Mr. Tyon's medical records.   Mr. Tyon's medical records confirm the following medical conditions:

- Hypertension.   (Docket 92 at p. 10);
- Asthma.   Id.;
- Inflammatory liver disease.   Id. at p. 11; and
- Obesity with a BMI of 33.0-33.9.   Id.

Mr. Tyon's asthma is managed with an albuterol inhaler.  Id. at pp. 14, 18, 50, 63, 76, 89, 93, 130, 167 & 170.  The BOP records note Mr. Tyon "rarely uses albuterol."  Id. at p. 129.  Mr. Tyon received two doses of the Moderna vaccine for COVID-19 on March 31 and April 27, 2021.  Id. at p. 165.  He tested positive for COVID-19 on November 18, 2021, and January 11, 2022.  Id. at pp. 2 & 95.  Although Mr. Tyon tested positive, he remained asymptomatic during both periods of quarantine while in BOP custody.  Id. at pp. 5 & 25.

## UNITED STATES' OPPOSITION

The government opposes Mr. Tyon's motion for compassionate release. (Docket 99).  First, because he has recovered from COVID-19 following both positive tests, the government argues Mr. Tyon "has not shown extraordinary and compelling circumstances required for release based on his medical conditions or susceptibility to COVID-19."  Id. at p. 3.  Second, the government asserts Mr. Tyon's hypertension and asthma are controlled by medication.  Id. at pp. 9-10.  Third, the government submits defendant's obesity is barely in the obese range at 33.0-33.9 and does not justify release.  Id. at pp. 10-11.  Fourth, the government argues the BOP records show defendant's inflammatory liver disease is being monitored and treated.  Id. at pp. 11-12.

Finally, the government contends the 18 U.S.C. § 3553(a) factors weigh against granting Mr. Tyon compassionate release.  Id. at pp. 15-17.  According to the government, Mr. Tyon has a long criminal history involving violence, drug distribution and possession of a firearm during the drug offense.  Id. at p. 15.

6

For these reasons, the government asserts "he poses a risk of danger to the community." Id. In the government's view, the court considered the COVID-19 affect on society and Mr. Tyon heading into BOP custody in June 2020 when the court sentenced him to a 235-month custody sentence at the bottom of the Sentencing Guidelines range. Id. The government argues a reduction in defendant's sentence to home confinement "would not be a deterrent, but would create a disparity in sentencing as to other similar individuals." Id. at p. 17. "[C]onsidering the totality of [the] circumstances under § 3553," the government concludes defendant's motion for compassionate release should be denied. Id.

In reply, Mr. Tyon submits because "of the waning efficacy of the vaccines combined with more vaccine-evading variants . . . . the Court should consider the totality of [his] medical conditions." (Docket 101 at pp. 2-3). Defendant reminds the court that he "is not arguing his weight by itself justifies release" but rather "his weight—in combination with all other relevant considerations—passes this threshold." Id. at p. 3. Defendant's medical conditions include hypertension, asthma, inflammatory liver disease and hyperlipidemia. Id. at pp. 3-4. Mr. Tyon objects to the government's " 'divide and conquer' strategy," that is defendant's "conditions and circumstances—in isolation—do not warrant relief." Id. at p. 6. Instead, defendant argues "the right standard is to look at his conditions and circumstances in the aggregate." Id. Based on "his unique medical risks," Mr. Tyon "is asking for release based on the variant stage of the pandemic in combination with waning vaccine immunity." Id. at p. 7.

Addressing the § 3553(a) factors, defendant argues he "does not pose a danger to the community.  He has no disciplinary violations during his present period of BOP incarceration. . . . The violent instances . . . in [his] criminal history all occurred over a decade ago when [he] was in his twenties or younger."  Id. Because of his current age, defendant submits he is "less likely to re-offend or recidivate following release," particularly as a drug distribution offender.  Id. As an illustration of that maturity, defendant points out he had zero disciplinary violations during this period of BOP incarceration which confirms rehabilitation on his part.  Id. at p. 8.  For these reasons, Mr. Tyon contends the § 3553(a) factors support granting his motion for compassionate release.  Id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider an inmate's request for compassionate release after he exhausts the administrative remedies mandated by the statute.  18 U.S.C. § 3582(c)(1)(A)(i).  The government does not contend Mr. Tyon failed to exhaust his administrative remedies.  See generally Docket 99.  Accordingly, the court will address the merits of Mr. Tyon's request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."  United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).  That task was left to the United

8

States Sentencing Commission.  See 28 U.S.C. § 994(t).  Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  See id.  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.  U.S.S.G. § 1B1.13 comment. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[2]

The court previously surveyed the status of the law as to a court's authority under the First Step Act.  E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020).  A summary of that survey is sufficient here.

This court has held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person

---

[2]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."  United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

9

might bring before [the court] in motions for compassionate release."³  E.g., Magnuson, 2020 WL 7318109, at *5 (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

Turning to that task, medical records substantiate Mr. Tyon's multiple, serious health conditions as identified above.  Mr. Tyon has conditions identified by the Centers for Disease Control and Prevention ("CDC") that potentially increase the risk of severe illness from COVID-19, including

---

³The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so.  United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).  At best, the Eighth Circuit has skirted directly resolving the issue by proclaiming "the First Step Act in 2018 did not change the discretion afforded the district court."  United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) (internal citation omitted).

hypertension, asthma, obesity and inflammatory liver disease.[4] Additionally, it is also instructive that CDC guidance explains "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." See id.

Mr. Tyon's medical conditions are similar in risk and seriousness to other defendants who have been granted compassionate release by this court. See United States v. Eck, CR. 18-50058, 2020 WL 7390516 at *2 (D.S.D. Dec. 16, 2020) (noting conditions of type 2 diabetes, hyperlipidemia, hypertension, and asthma); United States v. Gravens, CR. 13-50101, 2020 WL 7390514 at *2 (D.S.D. Dec. 16, 2020) (noting conditions of hypertension, chronic obstructive pulmonary disease, and hyperlipidemia); United States v. Hosek, CR. 16-50111, 2020 WL 7318107 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of affective mood disorder, chronic pain, kidney stones, insomnia, and family history of heart disease, cancer, and auto-immune deficiency); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of type 2 diabetes, obesity, hyperlipidemia, hypertension, and depressive disorder); United States v. Adkins, CR. 19-50011, 2021 WL 603153, (D.S.D. Feb. 16, 2021) (noting conditions of type 2 diabetes, essential (primary) hypertension and being overweight).

---

[4]The CDC identifies the following conditions as ones that *might* increase the risk from COVID-19: moderate to severe asthma, cerebrovascular disease, cystic fibrosis, hypertension, neurologic conditions, overweight, liver disease, pulmonary fibrosis, type 1 diabetes, and several others. Id.

Mr. Tyon is 46 years of age. The Centers for Disease Control and Prevention ("CDC") recognizes the risk of severe illness as a result of COVID-19 increases with age, with older adults at higher risk. See Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated Aug. 4, 2021) (last checked May 31, 2022). "Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die. The risk increases for people in their 50s and increases in 60s, 70s, and 80s. People 85 and older are the most likely to get very sick." Id.

Adults of any age are at increased risk of severe illness from COVID-19 if they have certain conditions. Recently, the CDC updated its understanding of the health conditions increasing the risk from COVID-19. See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 2, 2022). The CDC now states individuals with the following conditions are more likely to become severely ill from COVID-19: cancer, chronic kidney disease at any stage, chronic liver disease including non-alcoholic fatty liver disease, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease ("COPD"), cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, diabetes (type 1 or type 2), some types of disabilities, heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised

condition or weakened immune system, certain mental health conditions, overweight and obesity, physical inactivity, being a current or former smoker, history of stroke or cerebrovascular disease, substance abuse disorders and several others.  Id.

Mr. Tyon has asthma and is obese, which the CDC considers to be conditions that *can* increase the risk from COVID-19.  Id.  Medical sources indicate that the level of severity for asthma is classified in part by the frequency and intensity of symptoms and functional limitations.  See Asthma Care Quick Reference, Nat'l Heart, Lung and Blood Inst., https://www.nhlbi.nih.gov/health-topics/all-publications-and-resources/asthma-care-quick-reference-diagnosing-and-managing (last visited May 31, 2022).

Mr. Tyon's medical records do not indicate he suffers from moderate to severe asthma.  In fact, his asthma appears well controlled with his current inhaler regimen.  (Docket 92 at pp. 14, 18, 50, 63, 76, 89, 93, 130, 167 & 170).  Mr. Tyon reported to his BOP care providers that he "rarely uses albuterol."  Id. at p. 129.  Absent any evidence supporting Mr. Tyon has moderate to severe asthma, the court concludes this condition is not a risk factor for severe illness from COVID-19.

Mr. Tyon falls into the obese category with a BMI of 33.0-33.9.  Though Mr. Tyon's BMI is elevated, he is not in the range of BMI that would persuade the court to consider release for extraordinary and compelling reasons.  Several courts, including courts in the District of South Dakota, have concluded that

obesity (defined as a BMI greater than 30.0) does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons.  See United States v. McAbee, CR. 14-40027, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, CR. 10-30027-01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

The court concludes Mr. Tyon's medical conditions and age do not constitute "extraordinary and compelling reasons" to warrant compassionate release.  Overall, the medical records show that Mr. Tyon is generally healthy and has not required significant medical care while incarcerated.  His asthma is capable of being controlled and managed while in a custodial setting and the evidence supports the BOP is currently doing so.  See United States v. Ayon-Nunez, No. 1:16-CR-00130, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation omitted).

Mr. Tyon's general concern about incarceration during the age of COVID-19 is understandable, but not an "extraordinary and compelling reason" justifying release.  The court finds Mr. Tyon has not met his burden of proof and presented "extraordinary and compelling reasons" based on his medical

14

conditions, age, sex, and conditions of confinement warranting a sentence reduction under § 3582(c)(1)(A)(i).

The court also recognizes the BOP's implementation of a COVID-19 vaccination program and administration of vaccines to inmates and staff. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked May 31, 2022). 319,242 doses of vaccine have been administered systemwide as of May 31, 2022, and the number continues to rise. Id.

The court understands Mr. Tyon's concern of being incarcerated during the age of COVID-19. Nevertheless, Mr. Tyon does not present "extraordinary and compelling" reasons for compassionate release.

### **3553(a) Factors**

The court concludes the § 3553(a) factors do not support relief. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others. 18 U.S.C. § 3553(a)(1)-(7).

Mr. Tyon pled guilty to conspiracy to distribute methamphetamine. During an interview with law enforcement, Mr. Tyon admitted receiving methamphetamine from four different sources. (Docket 80 ¶ 14). His factual basis statement acknowledged the conspiracy was responsible for at least 1.5

kilograms but less than 5 kilograms and that he possessed firearms in furtherance of and during his participation in the drug conspiracy.  Id. ¶ 5.

The government filed an information pursuant 21 U.S.C. § 851 asserting the defendant had a prior felony conviction for conspiracy to distribute a controlled substance.  (Docket 73).  With the § 851 information, the mandatory minimum sentence for the current offense was 180 months.  (Docket 80 ¶ 92).  The court sentenced Mr. Tyon to 235 months, the bottom of the United States Sentencing Guidelines range.  (Dockets 80 ¶ 94 & 85 at p. 2).  That sentence reflects the seriousness of his offense, provides appropriate punishment, promotes respect for the law and hopefully deters criminal conduct.  To his credit, Mr. Tyon appears to be on the right path and sincerely devoted to learning from this time in custody.  (Docket 92 at p. 199).

After consideration of all the § 3553(a) factors, the court concludes those factors do not support a motion for compassionate release.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 89) is denied.

Dated July 26, 2022.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE,